## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| Andrew Matz, | Civil Action No.: 3:25-559-JFA |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | (*Jury trial demanded*) |
| Great Dane, LLC f/k/a Great Dane Limited Partnership; and Georgia-Pacific, LLC | |
| Defendants. | |

Plaintiff alleges as follows:

### PARTIES AND JURISDICTION

1.     Plaintiff Andrew Matz is a citizen and resident of the state of South Carolina.

2.     Defendant Georgia-Pacific, LLC is a Delaware limited liability company with its principal place of business in the state of Georgia.

3.     Defendant Georgia-Pacific, LLC is authorized to do business in South Carolina and can be served with process via its registered agent, United Agent Group, Inc., at 6650 Rivers Avenue, North Charleston, South Carolina 29406.

4.     Defendant Georgia-Pacific, LLC is engaged in the business of manufacturing and distributing products by commercial trucking.

1

5.     Defendant Georgia-Pacific, LLC owns and operates facilities located within the state of South Carolina.

6.     Defendant Georgia-Pacific, LLC has established continuous and systematic contacts with the state of South Carolina sufficient for the exercise of personal jurisdiction over it by this Court, the exercise of which will not offend traditional notions of fair play and substantial justice, and is consistent with the constitutional requirements of due process.

7.     Defendant Great Dane, LLC f/k/a Great Dane Limited Partnership is a Delaware limited liability company with its principal place of business in Illinois.

8.     Defendant Great Dane, LLC can be served with process via its registered agent at Cogency Global, Inc., at 2 Office Park Court, Suite 103, Columbia, South Carlina 29223.

9.     Defendant Great Dane, LLC f/k/a Great Dane Limited Partnership is engaged in the business of designing, manufacturing, testing, marketing, promoting, distributing, and/or selling trailers and other products, or otherwise placing trailers and other products into the stream of commerce, including the trailer that is the subject of this action.

10.     Defendant Great Dane, LLC f/k/a Great Dane Limited Partnership has minimum contacts with South Carolina, and / or sold the subject trailer with the understanding it would be used in South Carolina by a South Carolina company.

2

11.     Defendant Great Dane, LLC f/k/a Great Dane Limited Partnership has purposefully availed itself of the privilege of conducting business activities within the State of South Carolina by placing products, including the subject trailer at issue in this matter, into the stream of commerce and by marketing their products and selling their products within the state of South Carolina.

12.     Defendant Great Dane, LLC f/k/a Great Dane Limited Partnership, does reasonably expect, or should reasonably expect, that its business activities could or would have consequences within the state of South Carolina thereby subjecting it to this Court's jurisdiction.

13.      Defendant Great Dane, LLC f/k/a Great Dane Limited Partnership, has established continuous and systematic contacts with the state of South Carolina sufficient for the exercise of personal jurisdiction over it by this Court, the exercise of which will not offend traditional notions of fair play and substantial justice, and is consistent with the constitutional requirements of due process.

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between Plaintiff and Defendant.

15.     The amount in controversy in this matter exceeds $75,000.00, satisfying the jurisdictional requirement contained in 28 U.S.C. § 1332(a).

16.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

17.     On July 27, 2023, Plaintiff Andrew Matz was severely injured while hauling a defective flatbed trailer manufactured by Defendant Great Dane, that was improperly loaded with OSB plywood (hereinafter the "cargo") by Defendant Georgia-Pacific.

18.     At approximately 1:55PM, due to another vehicle stopping in front of Mr. Matz, the truck's automatic braking system engaged causing a hard braking event without warning to Mr. Matz.

19.     During this hard braking event, the cargo loaded onto the trailer by Defendant Georgia Pacific, shifted violently forward, gained velocity, and crashed into, crushed, and flattened the cab guard[1] onto and into the cab of the truck, crushing Plaintiff under the cargo and catastrophically injuring him.

20.     The result:

---

[1]     The "cab guard" is a structure affixed to the trailer that separates and protects a truck cab and its occupant from the cargo loaded onto the trailer.  The cab guard is also known as a "front end structure," "header board," "bulkhead," "headache rack," "cab rack," "cab protector," and "back rack" in the industry.



21.    At all times relevant, Plaintiff was employed as a commercial truck driver by JB Hunt.

22.    JB Hunt owned the truck and rented the subject trailer from Metro Trailer Leasing, Inc.

23.    The truck subject of this action bears Vehicle Identification Number is 3HSDZAPR5NIN784716.

24.    The subject trailer was a flatbed trailer manufactured by Defendant Great Dane, LLC f/k/a Great Dane Limited Partnership and, upon information and belief, bore VIN #: 1GRDM9624DI1Z20191:



25.     The cab guard was attached to the subject flatbed trailer.

26.     On or about July 27, 2023, Plaintiff was directed by his employer JB Hunt to pick up a load of OSB plywood from Defendant Georgia Pacific's facility in Alcolu, South Carolina.

27.     After Plaintiff arrived at the facility, Defendant Georgia Pacific loaded the cargo onto the trailer.

28.     Defendant Georgia Pacific, its agents, servants, and / or employees improperly loaded Plaintiff's trailer with the cargo.

29.     The cargo was concentrated in the center of the trailer with approximately 8 feet of space between the cargo and the cab guard.

30.     The cargo was stacked too high, and the trailer was overloaded.

6

31.     Plaintiff properly secured tarps and straps over the cargo.

32.     The foreseeable braking event caused the cargo to crash into the cab guard attached to the trailer and flattened it:



33.     The cargo continued forward, over the deformed cab guard, and crashed into the rear of the cab causing severe structural damage, crushing, and flattening it with Plaintiff inside:



34. As a result, Plaintiff suffered catastrophic injures resulting in immediate and prolonged medical treatment, substantial pain and suffering, and other damages.

## A. The Cargo

35. Defendant Georgia Pacific's agents and / or employees were responsible for the proper loading and distribution of the cargo on the trailer.

36. Defendant Georgia Pacific failed to properly load and distribute the cargo onto the trailer by:

     a. concentrating the cargo such that it allowed too much space between the cab guard and the cargo;

     b. overloading the trailer;

c.  stacking the cargo too high, creating an unstable load; and

d.  failing to position and secure the cargo such that it prevented load shifting during a hard braking event.

37.    As a result, the hard braking event caused the cargo to gain momentum, and force, break out of the straps, shift forward flattening the cab guard, and intrude into and on top of the truck cab crushing it and crushing Plaintiff causing catastrophic injuries.

**B. The Cab Guard**

38.    At the time of the crash, the subject trailer was in a defective condition and unreasonably dangerous for its foreseeable use.

39.    The cab guard was intended to prevent cargo loads from coming into contact with the cabs of trucks pulling cargo trailers.

40.    The subject trailer had a structurally inadequate design because the cab guard was unreasonably vulnerable to collapse during a cargo shifting event.

41.    This resulted in the cab guard having an unreasonably dangerous inability to maintain its geometry in a foreseeable cargo shifting event.

42.    This defect in the cab guard allowed the moving cargo to deform the cab guard downward, collapsing it, and allowing the cargo to continue into the cab of the truck and on top of Plaintiff.

43. Upon information and belief, at the time the subject trailer was sold, Great Dane had not conducted testing to determine the strength of the subject trailer's cab guard structure in cargo shifting conditions.

44. At all times, Plaintiff was operating the subject truck in a reasonably foreseeable manner.

45. At all times, neither Plaintiff nor his employer possessed facts or information sufficient to apprise them of the unreasonable risk of harm posed by the defective condition of the subject trailer's cab guard.

46. The event which forms the basis of this complaint was a real-world event reasonably foreseeable to Defendant Great Dane during the design and manufacturing process of the subject trailer.

47. The defects in the subject trailer's cab guard structure were the direct and proximate cause of Plaintiff's injuries.

## CAUSES OF ACTION

**First:**     **Negligence / Gross Negligence as to Defendant Georgia-Pacific, LLC**

48. Plaintiff incorporates all prior paragraphs.

49. At all relevant times, Defendant Georgia-Pacific, LLC owed a duty to Plaintiff to exercise ordinary care to ensure that the cargo was loaded properly and in a reasonably safe condition and / or to warn Plaintiff of any hazards connected to the load.

10

50.    Georgia-Pacific was required to contain, immobilize, and secure the cargo to prevent shifting as required by 49 CFR § 393.100 *et seq*., and specifically 49 CFR § 393.118.

51.    Defendant breached the duties owed to Plaintiff by improperly loading the cargo including but not limited to:

    a.  concentrating the cargo such that it allowed too much space between the cab guard and the cargo;

    b.  overloading the trailer;

    c.  stacking the cargo too high, creating an unstable load; and

    d.  failing to position and secure the cargo such that it prevented load shifting during a hard braking event;

    e.  failing to inspect the load in order to discover the dangerous condition;

    f.  failing to correct a dangerous condition;

    g.  failing to properly train and / or supervise its employees, servants, or agents regarding proper loading techniques; and

    h.  other acts of negligence that may be uncovered through discovery and at trial.

52.    As a direct and proximate result of Defendant's negligence, the cargo shifted violently during transport, causing severe injuries to Plaintiff.

53.    Plaintiff has suffered damages as a result of Georgia-Pacific's negligence, including but not limited to medical expenses, lost wages, pain and suffering, and loss of enjoyment of life.

**Second:**    **Negligent Hiring, Training as to Defendant Georgia-Pacific, LLC**

54.    Plaintiff incorporates all prior paragraphs.

55.    Georgia-Pacific had a duty to hire, train, and supervise its employees to ensure that they performed their duties, including the loading of cargo in a safe and competent manner and in accordance with 49 CFR § 393.100 *et seq*

56.    Georgia-Pacific breached this duty by hiring unqualified employees, failing to provide adequate training on proper loading and securing techniques, and failing to supervise employees to ensure compliance with safety standards.

57.    As a direct and proximate result of Georgia-Pacific's negligence in hiring, training, and supervising its agents and employees, the cargo was improperly loaded, resulting in the catastrophic injuries sustained by Plaintiff.

**Third:**    **Strict liability as to Great Dane, LLC**

58.    Plaintiff incorporates all prior paragraphs.

59.    At all times, Defendant Great Dane was a "seller" of the subject trailer as that term is defined by S.C. Code Ann. § 15-73-10 *et seq*.

60.    At the time of the sale of the subject trailer, the subject trailer was defective in its design and unreasonably dangerous for its intended and foreseeable uses.

61.    At no time prior to the subject event was the trailer altered or modified in any way.

62.    At the time of the subject trailer's design and manufacture, safer alternative designs were existing and available that would have reduced the risk of failure / collapse experienced by the subject trailer.

63.    While not exhaustive of the feasible, alternative designs available to Defendant Great Dane, the following alternative designs could have eliminated the risk of harm and failure associated with the subject trailer's cab guard:

a.  replacing lower strength materials with higher strength materials in the design of the cab guard; and

b.  any other alternative designs utilized by Defendant Great Dane or its competitors in similar truck models as may be revealed by discovery.

64.    None of the above-described designs would negatively affect the utility, functionality, or operation of the entire trailer.

65.    These design alternatives were technologically and economically feasible at the time of the design and manufacture of the subject trailer.

66.     These improvements would only make the trailer and the cab safer in foreseeable cargo shifting events with little additional cost to Defendant Great Dane or its customers.

67.     At the time the subject truck was designed and manufactured, Defendant Great Dane had not conducted adequate testing to determine the strength of the subject trailer's cab guard.

68.     These actions resulted in the subject trailer's inadequate structural support which resulted in the guard's failure and collapse during the subject wreck.

69.     The defective design of the subject trailer's cab guard rendered it unreasonably dangerous for the use for which it was sold and was the direct and proximate cause of the failure and collapse of the cab guard and subsequent injuries to Plaintiff.

70.     At the time of the event, the subject trailer was without substantial change in the condition in which it was sold outside normal and expected wear from its foreseeable use.

71.     At no time prior to the events subject of this lawsuit did Defendant Great Dane provide a conspicuous or adequate warning to Mr. Matz, Metro Trailer, or his employer regarding the cab guard and its susceptibility to collapse and failure or to the ultimate consequences of that failure, crushing of the cab and its occupant, Mr. Matz.

14

72.     This unreasonably dangerous characteristic of the subject trailer was not open, obvious, or known to the users.

73.     These warning defects also directly and proximately caused Mr. Matz's injuries as he continued to make normal use of the trailer without sufficient warning of the defect and that use ultimately caused him injury.

**Four:     Negligence / Gross Negligence: design and warning defects as to Great Dane, LLC**

74.      Plaintiff incorporates all prior paragraphs.

75.     At all relevant times, Defendant Great Dane was responsible for the design, testing, inspection, part selection, assembly, equipping, marketing, distribution, and sale of the subject trailer.

76.     These responsibilities specifically include the design and manufacture of the subject trailer.

77.     At all times, Defendant Great Dane owed a duty to Mr. Matz and any other purchaser or user of the subject trailer of reasonable care in the design, testing, inspection, part selection, assembly, equipping, marketing, distribution, and sale of the subject trailer.

78.     Defendant Great Dane was negligent, grossly negligent, willful, wanton, reckless, and / or careless in the design, testing, inspection, part selection, assembly, equipping, marketing, distribution, and sale of the subject trailer and breached the duties owed Mr. Matz by the following acts:

a. Designing the cab guard such that it cannot withstand foreseeable forces from shifting cargo in a foreseeable braking event;

b. Manufacturing the cab guard with defects that caused the cab guard to fail from the impact of shifting cargo in a foreseeable braking event;

c. Failing to adequately test and / or inspect the subject trailer's cab guard prior to its placement in the stream of commerce;

d. Failing to warn the foreseeable users of the unreasonably dangerous risk associated with the cab guard's inability to withstand shifting cargo in foreseeable real-word crashes; and

e. Any other acts of negligence in the design, formulation, and / or hazard communications that may be uncovered through discovery and at trial.

79. As a direct and proximate result of these acts, Plaintiff suffered serious and painful injuries for which he is entitled to recover.

**Five:          Breach of Implied Warranty as to Great Dane, LLC**

80.  Plaintiff incorporates all prior paragraphs.

81. Defendant Great Dane impliedly warranted to the purchaser and foreseeable users of the subject trailer, that the subject trailer was merchantable, was fit for the ordinary purpose for which such goods are sold and used and was fit for the particular use for which JB Hunt rented and used it, i.e. transportation of goods.

82.     The purchaser and foreseeable users of the subject trailer made ordinary use of the subject trailer and, contrary to the implied warranties given, the subject trailer was defective, unreasonably dangerous, and unfit for its ordinary and foreseeable use, as well as for the particular use for which it was sold.

83.     As such, Defendant Great Dane breached the implied warranties given with the subject trailer and, as a direct and proximate result, Plaintiff suffered serious injury and damages for which he is entitled to recover.

**JURY DEMAND**

84.     Plaintiff demands a trial by jury on all claims so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1. For compensatory damages in an amount to be determined at trial;

2. For medical expenses, both past and future;

3. For lost wages and loss of earning capacity;

4. For pain and suffering, both physical and emotional;

5. For punitive damages as may be warranted by the facts and law;

6. For pre-judgment and post-judgment interest as allowed by law;

7. For all costs of Court;

8. For such other and further relief as the Court deems just and proper.

[SIGNATURE PAGE TO FOLLOW]

**RICHARDSON THOMAS, LLC**

By:    *s/Grace M. Babcock*
       Grace M. Babcock (FBN 13880)
       Chris Moore (FBN 10445)
       1513 Hampton Street, 1st Floor
       Columbia, South Carolina 29201
       T:  (803) 281-8150
       F:  (803) 632-8263
       grace@richardsonthomas.com
       chris@richardsonthomas.com

January 30, 2025